UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM RODRIGUEZ PADRON,

       Petitioner,

    v.

WARDEN, SOUTH FLORIDA
DETENTION FACILITY,  US
ATTORNEY GENERAL,

       Respondents.

_____/

Case No. 2:26-cv-1789-KCD-NPM

## ORDER

Petitioner William Rodriguez Padron has filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] As best the Court can tell, he claims that his continued imprisonment violates the Fifth Amendment. (*Id.* at 7-8.) Respondents oppose the petition. (Doc. 7.) For the reasons below, the petition is **GRANTED**.

## I. Background

Padron is a Cuban national who arrived in the United States in 1980. Ten years later, he adjusted his status to lawful permanent resident. He was then convicted of importing cocaine and served five years in prison.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

In 1993, an immigration judge ordered Padron removed. ICE could not deport him at the time, so he was released on an order of supervision. For decades, Padron lived in the community under his conditions of release. But then, on November 16, 2025, ICE revoked his supervision and detained him to execute the removal order. ICE apparently intends to remove Padron to Mexico

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still

here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Padron satisfies the initial temporal requirement. ICE took him into custody over six months ago. Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Padron has carried his initial burden by showing a good

3

reason to believe there is no significant likelihood of removal. He does so by pointing to Cuba's refusal to accept him and to the fact that he has not yet been deported. (Doc. 1 at 7.) Indeed, the Government has had many years to deport Pardron, and it has failed. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Padron's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Padron will be removed in the near future. (Docs. 7, 7-5.) Instead, the Government proffers that Padron refused removal to Mexico, citing his refusal to sign removal forms. (Doc. 3-2 at 2.) Although Padron refused to sign the forms, the Government does not tell the Court whether that refusal even acts as a roadblock to his removal. It doesn't seem so because the deportation officer's declaration states that ICE will again attempt to remove him to Mexico "in the near future." (*Id.*) At bottom, because the Government offers nothing to suggest that his removal to Mexico, or anywhere else, is more likely now than it was decades ago, Padron must be released.

It is easy to see why this outcome might cause unease. Padron is a convicted felon. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for nearly

4

fifty years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Padron will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his prior order of supervision. To the extent Padron raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner William Rodriguez Padron from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ENTERED** in Fort Myers, Florida on June 22, 2026.

Kyle C. Dudek
United States District Judge

6